**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| MITCHELL J. BERNARD and ANNETTE ZUCCO | : | CASE NO. 08-40996-JBR |
| DEBTORS | : | |

**MEMORANDUM OF DECISION ON MOTION OF UNITED STATES TRUSTEE TO DISMISS CASE FOR ABUSE UNDER 11 U.S.C. § 707(b)(2) OR IN THE ALTERNATIVE, PURSUANT TO 11 U.S.C. § 707(b)(3) AND TO EXTEND TIME TO OBJECT TO DISCHARGE PURSUANT TO 11 U.S.C. § 727**

This matter came before the Court for a non-evidentiary hearing on the Motion of United States Trustee to Dismiss Case for Abuse under 11 U.S.C. § 707(b)(2) or in the Alternative, Pursuant to 11 U.S.C. § 707(b)(3) and to Extend Time To Object to Discharge Pursuant to 11 U.S.C. § 727 [# 18] and the Debtors' objection thereto [# 27]. Although the UST takes issue with several items on the Debtors' Form 22A, the Motion turns on whether the Debtors may properly deduct their taxes withheld rather than the actual amount of the tax liability incurred. For the reasons set forth herein the Motion will be ALLOWED.

**FACTS**

The Debtors filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code on March 31, 2008. The Debtors completed the Statement of Current Monthly Income and Means Test Calculation (the "Means Test") using Official Form 22A and determined that they are above median income debtors. But, based on their calculation of their "current monthly income" ("CMI"), the Debtors concluded that a presumption of abuse does not arise [#6]. The UST, however, filed a statement that she had reviewed the Debtors' materials and determined that a presumption of

substantial abuse did arise.

Line 25 of the Means Test indicated that the total average monthly expense they actually incurred for all federal, state and local taxes, other than real estate and sales taxes, is $2,474.00. The United States Trustee filed the instant motion asserting that the Debtors underreported their CMI, including their failure to include one paycheck that was received outside the applicable six month period for compensation for work performed within the period; that they claimed certain deductions, including the tax deduction on line 25, that should be adjusted downward; and that their deductions for certain debt payments reflected on line 42 should be reflected, downward in one instance and upward in another. The Debtors objected and also amended their Means Test [# 28]. Line 25 of the Amended Means Test remains unchanged. The Debtors continue to exclude the one pay check at issue from the calculation of their CMI.

At the hearing The Debtor's counsel informed the Court that he had just learned that the Debtors had separated but he had not spoken to Mr. Bernard and therefore could not address Mr. Bernard's expenses. Counsel for the UST informed the Court that she was hearing about the separation for the first time at the hearing. The Court asked the parties on more than one occasion during the non-evidentiary if they wanted an evidentiary hearing. Both declined. Moreover both agree that if the UST's calculation of the tax expense is correct, a presumption of substantial abuse arises even if the Debtors are entitled to exclude the paycheck at issue from their CMI.

**POSITION OF THE PARTIES**

The UST seeks dismissal of the case under § 707(b)(2) and/or § 707)(b)(3) of the Bankruptcy Code. She argues that the pay check excluded from the Debtors' CMI is

income that was derived during the six months ending on February 29, 2008, the last day of the month immediately preceding the Petition Date, and therefore § 101(10A) requires that it be included in the calculation. The UST also asserts that the Debtors' deduction of the amount of taxes withheld from their pay is excessive because they have received a net tax refund of $5,275 for 2007. At oral argument counsel for the UST asserted that this refund is typical of what the Debtors had received in prior years as well. She also challenges some of the Debtors' expenses on their Schedule J and argues that even if there is no presumption of abuse, the totality of the circumstances warrants dismissal under § 707(b)(3).

The Debtors argue that the pay check at issue should not be included in their calculation of CMI as it was not derived and received during the six months prepetition. In challenging the UST's downward adjustment of their tax deduction, they allege that any such adjustment is speculative. To rebut the assertion that the totality of the circumstances compels dismissal, they argue that they are high income debtors whose lifestyle requires certain expenditures.

**DISCUSSION**

The Court may dismiss the Chapter 7 case of an individual debtor whose debts are primarily consumer debts if it finds that the granting of relief would be an abuse of the provisions of Chapter 7. 11 U.S.C. § 707(b)(1). In determining whether the granting of relief would be an abuse of Chapter 7's provision, § 707(b)(2)(A)(i) instructs

> the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of--

3

> (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,575, whichever is greater; or
>
> (II) $10,950.

To determine CMI, the first step in the process, the Court looks to its definition set forth in § 101(10A). That section provides, in relevant part:

> (A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on-
>
>> (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii)....

As the UST correctly notes, CMI is not restricted to income a debtor derives *and* receives during the six months prepetition; the income has to have been "derived" during the six month period but the timing of its actual receipt is irrelevant. Giving "derived" its ordinary meaning, namely "formed or developed out of something else," WEBSTER'S THIRD INTERNATIONAL DICTIONARY, the Court concludes that CMI includes income that resulted from employment during the relevant six month period even though the Debtor received the actual paycheck for that work after the end of the six month period. Income derived from employment prior to the beginning of the six month period but actually received during the six month period should not be included. When CMI is adjusted to incorporate these changes, there is minimal if any impact on the Debtors' CMI.

The next step in determining whether a presumption of substantial abuse exists is the calculation of the amount by which the Debtors' CMI should be reduced. The

4

deductions are those determined in accordance with § 707(b)(2)(A)(ii), (iii), and (iv).

The prime factor at issue in this case is the amount the Debtors may deduct for taxes, which are classified as "Other Necessary Expenses" under § 707(b)(2)(A)(ii)(I).[1] As both the Code and Form 22A expressly state, Other Necessary Expenses are based on "the debtor's *actual* monthly expenses." (Emphasis added).

In *In re Stimac*, 366 B.R. 889 (Bankr. E.D. Wis. 2007), a case relied on by the UST, the court addressed the tax deduction, albeit in the context of Chapter 13.[2] It noted that other courts have held that "simply inserting the amount withheld from a debtor's paycheck... is incorrect." "Given that the debtor's taxes are apt to change from year to year, and that many debtors engage in over-withholding and receive a tax refund, this calculation [of total average monthly expenses actually incurred for taxes]

---

[1] Section 707(b)(2)(A)(ii)(I) provides in relevant part:

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent.

The Internal Revenue Service lists the Other Necessary Expenses in § 5.15.1.10 of the Internal Revenue Service Manual ("IRM").  *See In re Barraza*, 346 B.R. 724, 730 (Bankr. N.D. Tex. 2006).  According to the IRM, taxes are a necessary expense if "[i]t is for current federal, FICA, Medicare, state and local taxes."  *See* chart at IRM § 5.15.1.10.

[2] Chapter 13 incorporates § 707(b)(2)(A) and (B) for the above median income debtor.  11 U.S.C. § 1325(B)(3).  *See also* Official Form 22C, line 30.

5

can be problematic." *Id.* at 892-93.  Recognizing that using the amount of taxes actually paid by the debtor for the prior year may yield a "deduction that may have no relation to the debtor's situation at the time of, or six months prior to, filing the petition..." the court held that the amount to be deducted for taxes was the amount actually paid in the prior year, divided by 12, but subject to a debtor's showing that such deduction was inadequate due to a change in circumstances.  *Id.* at 893-94.  Ultimately, however, the court, as had courts in other jurisdictions, permitted a debtor to deduct the amount of the withholding provided that the debtor committed 50% of his tax refunds to pay unsecured creditors under the plan.  *Id.* at 893.  S*ee also In re La Plana*, 363 B.R. 259, 267 (Bankr. M.D.Fla. 2007)(debtor required to remit 100% of the refund to the plan).

Although these remedies to correct for over-withholdings may be appropriate in a Chapter 13 case, they do not work in the Chapter 7 context.  Therefore the Court must determine how the expenses actually incurred for taxes should be calculated in a Chapter 7 case.  In *In re Robinette*, 2007 WL 2955960 (Bankr. D.N.M. October 2, 2007), also cited by the UST, the court faced the identical issue in a Chapter 7 case.  In that case, however, the only evidence of the actual tax liability was that the debtors did not anticipate any refund at their current level of withholding.  Therefore the court permitted the debtors to deduct the amount of their monthly withholdings.

In *In re Bishop*, 2007 Bankr. Lexis 3096 (Bankr. E.D. Ky. September 17, 2007), the court held that the Chapter 7 debtors could not deduct the amount of their withholdings but had to use their actual tax liability.  The court did not state how the actual amount of taxes was to be determined, only that "[t]o the extent a debtor is

entitled to a tax refund, those funds must be included in disposable income in completing the means test to determine whether or not the presumption of abuse of the bankruptcy system arises in a given case." *Id.* at *11.

In *In re Lipford*, 2008 WL 1782640 (Bankr. M.D.N.C. April 17, 2008), a case under Chapter 7, the court confronted the difficulty in calculating the actual monthly expense for taxes.

> The Court does not expect a debtor or her counsel to be able to see into the future, so any method that reasonably and accurately reflects the debtor's actual tax expense for the six-month period would meet the requirements of line 25 on Form B22A. One extreme would be for the debtor to simply use her actual payroll deductions, which is an imperfect solution because, as explained above, the results are not necessarily reliable. The other extreme is for the debtor to complete a short form tax return, which is an impractical solution because it would require significant effort and expense by the debtor and her counsel, and they may not be able to complete it in a timely manner. There is a better solution. When the six-month period of Section 101(10A) occurs during a period for which federal and state tax returns already have been filed, it is reasonable for the debtor to use the rates indicated on those returns. If the six-month period is only partially covered by a previously-filed tax return, then the debtor should proportionately mix the rate on the return with the present year's rate for the annualized income. For the period in the new tax year, the debtor should remove from the previous year's return all actual changes, such as charitable giving, and non-recurring income, loss, and deductions, and add in any new changes that the debtor can demonstrate. This process does not require the debtor's counsel to be a tax expert. Rather, it gives counsel the ability to accurately represent the debtor's tax liability.

*Id.* at *10.

The Court agrees with the *Lipford* court's analysis and its solution. Debtors

7

should begin with the actual amount of taxes paid for the year prior to filing and then make whatever adjustments, upward or downward, are necessary. In the instant case, however, the Debtors prepared their Means Test without regard to the actual amount of taxes paid. They do not dispute that they received a net refund for 2007 taxes, nor do they dispute that the refund was consistent with the refunds they had received in prior years. When one-twelfth of the Debtors' actual tax expense for 2007 is used in line 25 of the Means Test, the presumption of substantial abuse arises.

The Debtors argue that the statute "removes economic reality" from the case because they incur their non-tax expenses monthly but do not receive a monthly tax refund and urge the Court to find some flexibility in the amount deducted for taxes. This argument ignores the reality that the Debtors control the amount of the withholdings and may change the amount at any time by completing new W-4's.

The Debtors' counsel informed the Court and the UST's counsel for the first time at the non-evidentiary hearing that the Debtors have separated. Although this fact could have a significant impact on the Debtors' ability to fund a Chapter 13 plan, the burden is on the Debtors to establish special circumstances. 11 U.S.C. § 707(a)(2)(B).[3] The

---

[3]11 U.S.C. § 707(a)(2)(B) provides:

> (i) In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.
>
> (ii) In order to establish special circumstances, the debtor

8

Debtors have failed to establish special circumstances and thus the presumption of abuse is unrebutted.

The Means Test essentially removes the finding of substantial abuse from the Court's discretion and largely reduces it to an arithmetic formula. Once the Court determines that the Means Test has been correctly calculated and that no special circumstances have been established, the Court has no choice but to dismiss the case if the Debtors refuse to convert the case to one under Chapter 13. But for those debtors who "pass" the means test, the Court must still consider whether the totality of the circumstances warrants dismissal. The Debtors argue that the totality of the circumstances does not warrant dismissal. They assert that they are high income debtors who require some disposable cash to maintain their current social circle for themselves and for their children. This argument ignores that § 707(b)(3) prevents debtors from spending what is truly disposable income to the detriment of their creditors. Yet because the case must be dismissed pursuant to § 707(b)(2), there is no need to reach the issue of whether there is cause to dismiss under § 707(b)(3).

**CONCLUSION**

---

> shall be required to itemize each additional expense or adjustment of income and to provide--
>> (I) documentation for such expense or adjustment to income; and
>> (II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.

9

For the reasons stated herein, the Motion is ALLOWED. The Debtors will be given fourteen days to file a motion to convert, absent which the case will be dismissed. A separate order will issue.

Dated: November 20, 2008  
_____  
Joel B. Rosenthal  
United States Bankruptcy Judge